545 A.2d 409

William H. Martin, Inc., and Chambers Development Company, Inc., Appellants *v.* The Township of Chartiers, Appellee.

Argued May 25, 1988, before President Judge CRUMLISH, JR., and Judges CRAIG, DOYLE, BARRY, PALLADINO, MCGINLEY and SMITH.

*Clifford B. Levine,* with him, *David G. Ries, Scott H. Fergus, Ralph F. Scalera, Thorp, Reed & Armstrong,* for appellants.

*Stanley R. Geary,* with him, *Richard DiSalle, Rose, Schmidt, Hasley & DiSalle,* and *James P. Liekar.*

OPINION BY JUDGE DOYLE, July 21, 1988:

Before us for consideration is the propriety of the grant of a preliminary injunction, which was issued by

the Court of Common Pleas of Washington County, and is yet one more piece of litigation in a continuing series of appeals arising from the implementation by the Department of Environmental Resources (DER) of a daily volume limit program limiting the amount of waste Chambers Development Company (Chambers) is entitled to dump per day. This particular case involves not DER directly, but rather the Township of Chartiers (Township), which is the situs where Chambers is currently disposing of waste material being brought in from New Jersey, pursuant to contracts entered into with certain New Jersey municipalities.[1]

The trial court on August 18, 1987 enjoined Chambers from collecting, transporting, processing, receiving, accepting or disposing of solid waste at the Arden Landfill in excess of a maximum daily volume of two thousand cubic yards or its equivalent in tonnage without obtaining a variance from the Zoning Hearing Board of Chartiers Township. The following day the trial court denied Chambers' request for a stay of that order. The grant of the preliminary injunction was appealed to this Court. In addition, Chambers petitioned this Court to stay the lower court's order; Judge BUCHER of this Court entered a stay. Judge BUCHER's order was then appealed by the Township to the Pennsylvania Supreme Court, which, on May 28, 1988, upheld the order staying the injunction. *See Township of Chartiers v. William H. Martin, Inc.*, 518 Pa. 181, 542 A.2d 985 (1988). Accordingly, the only issue which we now have

---

[1] For a more complete factual history of this case, *see Chambers Development Co., Inc. v. Department of Environmental Resources*, 110 Pa. Commonwealth Ct. 432, 532 A.2d 928 (1987); *see also Chambers Development Co., Inc. v. Department of Environmental Resources*, 118 Pa. Commonwealth Ct. 97, 545 A.2d 404 (1988).

before us is whether the trial court properly granted the preliminary injunction.

Chambers operates a one hundred sixty-acre landfill facility in the Township. The landfill contains two distinct valleys known as the west valley and the east valley. Until the time of the instant litigation, waste disposal had occurred exclusively in the west valley. Chambers has, however, prepared the east valley for eventual dumping and is presently using this valley in its operations. The landfill site is located in a part of the Township which is zoned residential and, therefore, the operation and maintenance of the landfill is not a permitted use; rather, it exists as a legal, preexisting, nonconforming use under the Township's zoning ordinance. The entire one hundred sixty acres is covered under the present DER permit, which allows for landfill operations in both valleys. Chambers is authorized by the permit to process a maximum daily volume of two thousand cubic yards or its equivalent in tonnage.

The instant litigation apparently had its genesis in contracts which Chambers entered into with certain New Jersey municipalities, providing for Chambers to accept and deposit their waste. The disposal of this New Jersey waste has resulted in a large increase in daily tonnage intake at the Arden landfill. What we are required to consider is whether the increased volume of waste deposited at the site constitutes, *per se*, an expansion of a preexisting nonconforming use.

Resolution of this issue is a central question to this case because the Township has proceeded principally under the theory that Chambers, by expanding the amount of waste being deposited at the landfill site, has *per se* violated the applicable zoning ordinance, and that this *per se* violation entitles the Township to an injunction as a matter of right. *See, e.g., Gateway Motels, Inc. v. Municipality of Monroeville,* 106 Pa. Common-

wealth Ct. 42, 525 A.2d 478 (1987); *Hilltown Township v. Mager,* 6 Pa. Commonwealth Ct. 90, 293 A.2d 631 (1972) (both cases holding that, under the Pennsylvania Municipalities Planning Code, showing of zoning ordinance violation demonstrates unlawful conduct which is properly enjoined).

The relevant zoning ordinance reads as follows:

Natural and reasonable expansion and extensions of nonconforming uses not in excess of 25% and in accordance with this Ordinance may be permitted by the Zoning Hearing Board after public hearing under these conditions:

1. The owner or operator desiring such expansion or extension shall file an application with the Building Inspector who shall thereupon set the matter for hearing before the Board.

2. Any use which is substantially different from the original nonconforming use shall be prohibited.

3. Additional parking area of itself shall not be considered an expansion.

The trial court in considering this ordinance found, that because the east valley had not actually been used for the disposal of waste at the time of the enactment of the ordinance, Chambers could not legally use the east valley unless it obtained a variance. It also determined that the increase in volume of waste deposited by Chambers represented, in and of itself, a substantial change in use. For these reasons, it granted the preliminary injunction.

As previously noted, the propriety of Judge BUCHER's stay of the lower court's order was appealed to the Supreme Court which recently decided that issue. In its opinion, the Supreme Court indicated that Chambers had an absolute right to increase daily volume of intake within the limits permitted by DER, and a right to uti-

lize the east valley without the necessity of obtaining a variance. The Court reached this result because it determined that "Chambers was not changing the intended use of the property, and was not expanding the use beyond the area which had been contemplated for such use at the time the landfill became nonconforming." *Martin,* slip op. at p. 8. The court thus concluded that Chambers had not violated the zoning ordinance as a matter of law by increasing the amount of waste it was depositing at the site. Keeping this legal pronouncement in mind, we shall proceed to review the trial court's grant of the preliminary injunction.

It is, of course, well settled that where a preliminary injunction has been granted, the scope of appellate review is limited to examining the record to determine if there were any apparently reasonable grounds for the trial court's action. *Township of South Fayette v. Commonwealth,* 477 Pa. 574, 385 A.2d 344 (1978). Only if it is plain that no such grounds exist, or that a rule of law relied upon is palpably erroneous or misapplied, will a trial court's decision be interfered with. *Singzon v. Department of Public Welfare,* 496 Pa. 8, 436 A.2d 125 (1981). The trial court in its opinion granted the preliminary injunction because it concluded that the large increase in the volume of waste being deposited at the Arden Landfill site constituted a *per se* violation of the applicable zoning ordinance. The Supreme Court's recent opinion indicates that this position was legally erroneous. Accordingly, we must conclude that the trial court misapplied the law, and, therefore, that its order granting the preliminary injunction must be reversed. *Township of South Fayette.*[2]

---

[2] Because of our disposition of this issue, we need not consider Chambers' other arguments.

ORDER

Now, July 21, 1988, the order of the Court of Common Pleas of Washington County, which granted the preliminary injunction in the above-captioned matter, is hereby reversed.